UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------- x
SMARTWATCH MOBILECONCEPTS LLC          :
                                       :
                          Plaintiff,   :
                                       :
            v.                         :          3:24-CV-01294 (SFR)
                                       :
TIMEX GROUP USA, INC.                  :
                                       :
                          Defendant.   :
------------------------------------------------------------- x

**MEMORANDUM & ORDER**

Plaintiff Smartwatch Mobileconcepts LLC ("Smartwatch") brings this action against Timex Group USA, Inc. ("Timex") for patent infringement. For the reasons below, I grant Timex's Motion to Dismiss the Amended Complaint with leave to file a Second Amended Complaint.

## I.   BACKGROUND

### A.   Factual Background

#### 1.   The Patent

Smartwatch brings this action alleging that the Timex FamilyConnect device infringes "one or more of claims 1-9" of United States Patent 10,362,480 ("the '480 patent"), entitled "Systems, methods and apparatuses for enabling wearable device user access to secured electronics systems." Am. Compl. ¶¶ 6-7, 9.

The '480 patent "was duly and legally issued by the U.S. Patent and Trademark Office" on July 23, 2019. Am. Compl. ¶ 7. It describes a system whereby a "wearable device" "authenticates" a user and then provides access to a "secured electronic system." ECF No. 30-1, at 11 ("Patent").

The Patent's "Background of the Invention" section explains that "wearable devices" include "'smartwatches,' such as Apple Corporation's 'Apple Watch'" and other similar devices, which sometimes can connect directly to cellular networks and at other times are dependent on a user's smartphone for connection to a cellular network. Patent 8. The figures accompanying the '480 patent include illustrations that are plainly identifiable as smartwatches. *Id.* at 4-5. In the "Detailed Description" of the Patent, several examples of authentication are provided. These include "password entry on the user interface (e.g., touch screen) of the smartwatch or by using the smartwatch to obtain biometric information," including "voice or skin illumination measurements," from the user. *Id.* at 10. This section also explains that a "secured electronic system" is "a system requiring electronic initiation for its operation or to gain access to it" and examples include "electromechanical locking systems that can be operated (unlocked) electronically with access codes; wireless vehicle compartment access and ignition initiation; equipment (industrial, medical, laboratory) secured by electronic codes for access and use; automatic teller machines; payment mechanisms; points-of-sale; and secured server or databases including protected information (e.g., patient records/information)." *Id.* at 9.

Given these illustrations and definitions, one example of an embodiment of this patent might include a process by which: (1) a user is wearing a smartwatch; (2) the user enters a password on the user interface of the smartwatch; (3) the smartwatch establishes communication via Bluetooth with a nearby vehicle; and (4) the vehicle door is unlocked, granting the user access as a result of the user's proximity to the vehicle. *Id.* at 6. Although the '480 Patent description includes several distinct processes, each nonetheless involves some

method by which a wearable device is used to authenticate and provide access to a secured

electronic system.

### 2.    The Infringement Allegations

Smartwatch's infringement allegations are found in a Claims Chart attached to the

Amended Complaint as Exhibit B, and relate to Claim 2. *See* ECF No. 30-2. Claim 2 states:

> A method for enabling a wearable device user to access secured electronic systems, said method comprising:
>
> placing a wearable device in contact with a user, said wearable device including a telecommunications carrier access identification module, a cellular RF communications module, and a short-range RF communications module;
>
> achieving secured, short-range RF communication between the wearable device and a secured electronic system;
>
> authenticating the user with at least one of the wearable device, a remote server via cellular communications supported by the telecommunications carrier access identification module and the cellular RF communications module, and the secured electronic system via the secured, short-range RF communication; and
>
> providing the user with access to or through the secured electronic system once authenticated;
>
> wherein said wearable device includes a GPS module for determining location of the wearable device user with respect to the secured electronic system, and wherein the step of providing a user access to or through the secured electronic systems is also dependent on the location of the wearable device user.

Patent 11.

In its Claims Chart, Smartwatch relies on screenshots of the Timex FamilyConnect

device user manual, and references to Timex's privacy policy, to plead its allegations of

infringement. *See* ECF No. 30-2. Although it provides minimal detail or narrative description

connecting these screenshots to the alleged infringement, Smartwatch alleges that "Timex

FamilyConnect has a method for enabling a wearable device user to access secured electronic

system." *Id.* at 4. Smartwatch further alleges that the FamilyConnect device includes cellular and Bluetooth functions, and a "short-range RF communications module," *id.* at 5, and "achieves 'Bluetooth functions,' i.e., secured short-range RF communication between the wearable device and a secured electronic system," *id.* at 6. Smartwatch says the "secured electronic system = Timex server's database," although it does not precisely specify what this "server's database" is. *Id.*

Smartwatch also alleges that FamilyConnect "describes 'Name, Phone Number, Email Address and Password', i.e., authenticating the user with the wearable device" and alleges that "authenticating the user = 'My Account.'" *Id.* at 7. Smartwatch further alleges that FamilyConnect "provides the user with 'My Account', i.e., access to or through the secured electronic system once authenticated." *Id.* at 8. Finally, Smartwatch alleges that FamilyConnect includes a "GPS module for determining location of the wearable device user with respect to the secured electronic system, and the step of providing a user access to or through the secured electronic systems is also dependent on the location of the wearable device user." *Id.* at 9. To support this statement, Smartwatch cites the user manual, which states that "[i]f the watch is inside a building or at a place where GPS reception is compromised, the child's location may not be indicated precisely." *Id.*

### B.    Procedural History

Smartwatch filed the Complaint in this action on August 6, 2024. ECF No. 1. Timex filed a Motion to Dismiss on November 25, 2024. ECF No. 18. Smartwatch then filed an

Amended Complaint on December 16, 2024. ECF No. 30. On December 17, 2024, the Court[1] ordered Timex to either file a notice requesting the Court consider the merits of the first Motion to Dismiss as applied to the Amended Complaint or file a new response to the Motion. ECF No. 31. On January 6, 2025, Timex filed an updated Motion to Dismiss, ECF No. 35, and supporting Memorandum, ECF No. 35-1 ("Def.'s Mem."). Smartwatch filed a Memorandum in Opposition on January 27, 2025, ECF No. 39 ("Pl.'s Mem."), and Timex filed its Reply on February 10, 2025, ECF No. 40 ("Def.'s Reply"). I found Timex's initial Motion to Dismiss moot on June 27, 2025. ECF No. 44.

On February 11, 2026, I held oral argument on the Motion to Dismiss. ECF No. 53.

## II.  LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018); *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 155 (D. Conn. 2016). Although this "plausibility" requirement is "not akin to a probability requirement," it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. I must "draw all reasonable inferences in Plaintiff's favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, I am not bound to accept "conclusory

---

[1] This case was first assigned to the Honorable Sarala V. Nagala and was transferred to me on January 6, 2025.

allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008).

Review of a motion to dismiss under Rule 12(b)(6) is generally limited "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge," if the plaintiffs "relied on [them] in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

Additionally, the law of the Federal Circuit applies to the question of whether a complaint states a claim of patent infringement on which relief may be granted. *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 35 (Fed. Cir. 2024). "[P]atentees need not prove their case at the pleading stage." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1346 (Fed. Cir. 2021). Instead, an adequate complaint need only contain "some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Id.* at 1353. "A plaintiff is not required to plead infringement on an element-by-element basis. Instead, it is enough that a complaint place the alleged infringer on notice of what activity . . . is being accused of infringement." *Id.* at 1352 (citations and internal quotation marks omitted); *see also id.* at 1353 ("The level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device."). "[W]hile a patentee's pleading obligations are not insurmountable, a patentee may subject its

6

claims to early dismissal by pleading facts that are inconsistent with the requirements of its claims." *Id.* at 1346.

## III.    <u>DISCUSSION</u>

Smartwatch claims that Timex has and is directly, indirectly, and contributorily infringing the '480 patent by

> actively encourag[ing] or instruct[ing] others (e.g., its customers and/or the customers of its related companies) . . . on how to use its products and services (e.g., to make systems, methods, and apparatuses to enable a wearable device to access secured electronic systems) such as to cause infringement of one or more claims 1-9 of the '480 patent, literally or under the doctrine of equivalents.

Am. Compl. ¶¶ 9-12. To support its pleading, Smartwatch points to Timex's FamilyConnect user manual and privacy policy.

Here, I find that the Amended Complaint fails to state a plausible claim of infringement.

### 1.    Patent Infringement Standard

"A patent grants its owner the right to exclude others from making, using, or selling the patented invention." *Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*, 72 F.3d 872, 878 (Fed. Cir. 1995) (citing 35 U.S.C. § 154). The Patent Act requires that each patent "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." 35 U.S.C. § 112(b). Patentees have the right to exclude others from using the invention defined by those claims. *Id.* § 154(a)(1). A "claim is infringed only if each limitation [specific feature] in the claim is found in the accused device, either literally or by a substantial equivalent." *Sony Elec., Inc. v. Soundview Tech., Inc.*, 225 F. Supp. 2d 164, 173 (D. Conn. 2002) (quoting *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 141 F.3d 1084, 1089 (Fed. Cir. 1998)). As noted, plaintiff need not *prove* its case at the pleading stage. *See Bot M8*, 4 F.4th at 1352. However, the factual

allegations in the complaint must be sufficient to show that the plaintiff has a plausible claim for relief, and pleading elements inconsistent with one or more limitations is fatal to an infringement claim. *Id.* at 1354.

Patent infringement may be direct or indirect. Direct infringement is governed by 35 U.S.C. § 271(a), which provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). "Under this form of liability, a defendant's mental state is irrelevant. Direct infringement is a strict-liability offense." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015); *see also Applera Corp. v. MJ Research Inc.*, 305 F. Supp. 2d 170, 172 (D. Conn. 2004) ("Determining patent infringement requires determining whether someone (1) without authority (2) makes, uses, offers to sell, sells, or imports (3) the patented invention (4) within the United States, its territories, or its possessions (5) during the term of the patent.") (citations omitted). "Direct infringement can be found when a defendant makes a product containing 'each and every limitation set forth in a claim,'" *Centrak, Inc. v. Sonitor Techs., Inc.*, 915 F.3d 1360, 1371 (Fed. Cir. 2019) (quoting *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek,Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005)), either directly or via the doctrine of equivalents, *see Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29  (1997).  Infringement may also be indirect, by actively inducing or contributing to infringement that is committed by another. *See* 35 U.S.C. § 271(b)-(c).

### 1.    Limitation 2: "Short-Range RF Communication"

Limitation 2 of Claim 2 of the Patent requires that "the wearable device and secured electronic system" achieve "secured, short-range [radio frequency] communication." Patent 11. In its Claims Chart, attached as Exhibit B to the Amended Complaint, Smartwatch alleges

that the FamilyConnect device satisfies this limitation. Smartwatch includes a screenshot from the FamilyConnect manual showing that the device has "Bluetooth functions," and then cites the Timex Privacy Policy,[2] which explains that a user can delete their data from the Timex server by accessing the Timex Smart App ("App"). ECF No. 30-2, at 6. Smartwatch alleges that the "secured electronic system = Timex server's database." *Id.*

Timex argues that the documents relied on by Smartwatch clearly show that the FamilyConnect device "does not achieve a secured, short-range RF communication between it and the secured electronic system." Def.'s Mem. 21.[3]

I agree with Timex. As Timex observes, the FamilyConnect manual states that the FamilyConnect device is a "*cellular*-connected watch for kids," and shows that the Bluetooth function is used to connect the device to wireless devices, such as a headset. *Id.* (citing ECF No. 35-3, at 5) (emphasis added). Although the Privacy Policy cited in the Amended Complaint instructs parents on how to delete information from Timex's server database, identified by Smartwatch as the "secured electronic system," it instructs them to do so "via the Timex Smart app," and *not via the wearable device*. ECF No. 30-2, at 6.

Thus, Smartwatch's references to the Timex manual and Privacy Policy do not show that the wearable device achieves short-range radio frequency communication with the "Timex server's database," which is the only "secure electronic system" identified by Smartwatch.

---

[2] The context of the privacy policy, which includes no internal mention of the FamilyConnect device, is completely absent from the Amended Complaint but, drawing all inferences in favor of the plaintiff at this stage of the litigation, I infer that it covers the FamilyConnect. Timex confirmed this understanding at oral argument.

[3] Page references to all documents are to the page number assigned by ECF, and not the page number in the native document.

These documents show that an App used on a different device achieves some form of communication with the secured electronic database. *Id.* ("You can immediately delete your data from the server by performing the following steps via the Timex Smart app"); *id.* at 7 (showing screenshots of the manual which indicate that the "app" is accessed on a smartphone, separate from the FamilyConnect device).

Accordingly, Smartwatch's conclusory allegations with respect to Limitation 2 are contradicted by the documents upon which Smartwatch relies.

### 2.    Limitation 4: The "Wearable Device User"

Limitation 4 of Claim 2 requires that the method "provid[es] the user with access to or through the secured electronic system once authenticated." Patent 11. In its Claims Chart, Smartwatch alleges that the FamilyConnect device satisfies this limitation because it "provides the user with 'My Account', i.e., access to or through the secured electronic system once authenticated." ECF No. 30-2, at 8.

Timex asserts that "the object of the claimed invention" in the '480 patent "is to enable a wearable device user to access a secured electronic system," as recited in the preamble to Claim 2. Def.'s Mem. 17. Timex maintains that the Amended Complaint fails to include any "factual content to support that the [FamilyConnect device] allows the wearable devi[c]e user (*i.e.,* the child) to access a 'secured electronic system.'" *Id.* at 18. Instead, Timex argues that the Amended Complaint "only plausibly supports the notion that the parent gains access" to a secured electronic system through the use of the Timex Smart App over the parent's smartphone, rather than through the FamilyConnect device. *Id.* Timex explains that the App is entirely separate from the FamilyConnect device and is operated by the parent, not the child. *Id.* According to Timex, because the child (the wearable device user) never accesses the Timex

server database (the secured electronic system), Smartwatch's allegations contradict the preamble of Claim 2 and Limitation 4. Def.'s Mem. 16-18.

Smartwatch did not directly respond to Timex's argument with respect to Limitation 4 in its Memorandum. Instead, it argued in conclusory fashion that "identification of the accused product that embodies Plaintiff's claimed invention, combined with the Claim Chart attached to the First Amended Complaint, are more than sufficient" to state a claim at the motion to dismiss stage. Pl.'s Mem. 7. At oral argument, Smartwatch argued for the first time that "the user" referenced in Limitation 4 can include someone other than the person wearing the wearable device—in this instance, the parent using the App. Smartwatch acknowledged that the "wearable device user" referenced in the limitations is the person wearing the FamilyConnect device (i.e., the child). However, Smartwatch argued that "the user" referenced in Limitation 4 is the person interacting with the App (i.e., the parent). According to Smartwatch, the person using the App has access to the "Timex server's database" via the "My Account" functionality, and thus "the user" has "access to or through the secured electronic system once authenticated" for purposes of Limitation 4.

Timex responds that the wearable device user (i.e., the child wearing the device) is "the user" referenced in the limitations and at no point does that user access the secured electronic system identified by Smartwatch.

I agree with Timex. Limitation 4 of Claim 2 requires that the process provide "the user with access to or through the secured electronic system once authenticated." Patent 11. Smartwatch acknowledges that the "wearable device user" is the person wearing the FamilyConnect device—not a third party operating an app on another device. As noted, the Amended Complaint identifies "Timex server's database" as the "secured electronic system"

at issue. ECF No. 30-2, at 6. The Amended Complaint does not describe an instance where the FamilyConnect device accesses the Timex server's database. Instead, the instruction manual makes clear that the *parent* accesses the Timex server's database via the "Timex Smart app." *See* ECF No. 35-3, at 8-10 ("Download and install the Timex FamilyConnect App on your phone"). Thus, the wearable device user never accesses the "secured electronic system"; instead, another individual (the parent) has access to the Timex server through an entirely separate device (their own smartphone). Accordingly, the FamilyConnect device does not provide the "wearable device user" with "access to or through the secured electronic system once authenticated." Thus, if "the user" is the "wearable device user," then the user does not access the secured electronic system.

It is plain that "the user" in the Claim 2 limitations is the "wearable device user" referenced in preamble to Claim 2—not some other third party using an app on a different device. Claim 2's preamble describes "a method for enabling a *wearable device user* to access secured electronic systems." Patent 11 (emphasis added).[4] Logically, "the user" in Limitation 4 refers back to this earlier reference in Claim 2 to "a wearable device user."

The parent may be said to be a user of the App—indeed, the manual instructs the parent on how to interact with the wearable device through the App, even including pictures of a mobile phone and phone screenshots showing how a parent can access and interact with that

---

[4] The "detailed description" of the patent describes that method to include placing a wearable device "in contact with a user," with "contact" referring to "the placement of a wearable device on the wrist of a user" such that it "contacts the skin of a user." Patent 10. The Timex manual and advertising material included by Smartwatch in the Amended Complaint show a child utilizing a smartwatch, ECF No. 30-2, at 4, the kind of device described by the '480 patent as an example of a "wearable device," Patent 8.

App. ECF No. 30-2, at 7. Were I to accept Smartwatch's argument that "the user" encompasses the parent—an individual who is not physically connected to or using the watch directly in any way—Limitation 4 might plausibly be implicated. The parent would indeed be provided access to or through the "Timex server's database" after entering a password. But under this reading, Limitation 4 would apply to every smartphone app user accessing any server with a password anywhere. Such a result would be totally untethered from the terms and scope of the patent, which specifically relates to wearable device access to secured electronic systems—not smartphone app access to a remote server after login. *See* Patent 11, Claim 2 preamble ("A method for enabling a wearable device user to access secured electronic systems . . . ."). The person using an app on another device is clearly not a "wearable device user" and thus not "the user" referenced in Limitation 4.

Accordingly, the conclusory allegation in the Claims Chart that "Timex FamilyConnect provides the user with "My Account", i.e., access to or through the secured electronic system once authenticated," ECF No. 30-2, at 8, is contradicted by the documents on which Smartwatch relies as well as Smartwatch's own assertion at oral argument that the parent user (and not the wearable device user) can access the secured electronic system. Moreover, I find implausible Smartwatch's argument that the "the user" in Limitation 4 is someone other than the wearable device user.

### 3.    Limitation 5: GPS "Location of the Wearable Device User"

Limitation 5 provides that "wherein said wearable device includes a GPS module for determining location of the wearable device user with respect to the secured electronic system, and wherein the step of providing a user access to or through the secured electronic systems is also dependent on the location of the wearable device user." Patent 11. Smartwatch asserts that

the FamilyConnect device satisfies this limitation because the FamilyConnect manual states that if "the watch is inside a building or at a place where GPS reception is compromised, the child's location may not be indicated precisely." ECF No. 30-2 at 9.

Timex argues that the GPS module in the FamilyConnect device, which can send "SafeZone" notifications to the parent's smartphone "when the child enters or leaves a designated area," does not control or allow access to the "secured electronic system." ECF No, 35-1, at 20. I agree with Timex.

Limitation 5 requires two steps: (1) that the wearable device has a GPS module which can determine the location of the wearable device user in relation to the secured electronic system; and (2) that a user's access to or through that system is dependent on the location of the wearable device user. *See* Patent 11. Smartwatch has alleged that the device has a GPS module. ECF No. 30-2, at 9. But, even assuming that "a user" encompasses the parent for the purpose of Limitation 5, Smartwatch has not alleged that the location of the device in any way affects the parent's access to the secured electronic system (the "Timex server's database").

Instead, Smartwatch points to the "SafeZone" function, which can provide the parent user with notifications when the wearable device user enters or exits a designated area. *Id.* But, apart from wholly conclusory allegations, Smartwatch does not connect this functionality or the location of the FamilyConnect device in any way with the parent user's access to the "Timex server's database"—which is the only secured electronic system mentioned in the Amended Complaint. ECF No. 30-2, at 9. No user's access to the Timex server is at any point affected by the location of the FamilyConnect device. Instead, the Claims Chart shows only that the FamilyConnect watch has GPS functionality, quotes a warning about GPS reception from the Timex manual, and then baldly restates the language from Limitation 5. ECF No. 30-

2, at 9. Smartwatch fails to provide factual allegations satisfying Limitation 5, i.e., that with the FamilyConnect device, "the step of providing a user access to or through the secured electronic systems is also dependent on the location of the wearable device user." Patent 11.

I therefore find that Smartwatch has not sufficiently pleaded factual allegations to plausibly allege Limitation 5 has been satisfied.

Smartwatch argues that in a patent case the "plaintiff need only give the defendant 'fair notice' of the infringement claim," and asserts it has done so here. ECF No. 39, at 5-6. But the Federal Circuit's decision in *Bot M8* makes clear that a complaint must state a "plausible claim" and it fails to do so where a complaint simply recites the claim elements and "merely conclude[es] that the accused product has those elements." *Bot M8 LLC*, 4 F.4th at 1353. Moreover, *Bot M8* makes clear that a plaintiff may plead itself out of court by attaching a Claims Chart that includes factual allegations inconsistent with infringement.[5]

Here Smartwatch's Claims Chart alleges in conclusory fashion that limitations are satisfied. In multiple instances, these conclusory allegations are contradicted by the documents upon which the Chart relies. In addition, Smartwatch relies on an implausible claim construction—namely, that "the user" is someone other than the wearable device user. Under these circumstances, the Amended Complaint fails state a plausible claim for infringement *See Bot M8,* 4 F.4th at 1354-55 (noting that "mere recitation of claim elements and corresponding conclusions, without supporting factual allegations, is insufficient to satisfy the *Iqbal/Twombly* standard" and where "the factual allegations are actually *inconsistent* with and

---

[5] *Disc Disease Sols., Inc. v. VGH Sols., Inc.*, 888 F.3d 1256 (Fed. Cir. 2018), relied upon by Smartwatch, is not to the contrary. Here, unlike in *Disc Disease*, Smartwatch's Claims Chart relies on documents that flatly contradict its own conclusory claims of infringement.

contradict infringement, they are likewise insufficient to state a plausible claim"); *ALD Soc., LLC v. Verkada, Inc.,* 654 F. Supp. 3d 972, 978-80 (N.D. Cal. 2023) (dismissing patent-infringement complaint where claim constructions were either "implausible" or "inconsistent with and contradict infringement").

## IV.    <u>LEAVE TO AMEND</u>

Timex argues, in its Response to Smartwatch's Opposition, that I should deny Smartwatch any opportunity to amend its complaint because Smartwatch already amended its complaint, did not respond to many of Timex's grounds for dismissal in its Opposition, and any effort to amend would be futile, dilatory, or taken in bad faith. ECF No. 40, at 7-8.

I do not agree. Smartwatch could conceivably replead to state a plausible claim. Moreover, it is the usual practice when granting a motion to dismiss to allow for repleading. Although Smartwatch has already filed an Amended Complaint in response to Timex's initial Motion to Dismiss, it did so without the benefit of this court's order. Therefore, in the interests of justice, I will grant Smartwatch a final attempt to amend its complaint.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, I grant Timex's motion to dismiss with leave to file an amended complaint on or before March 30, 2026 addressing the issues identified in this Opinion.

<b>SO ORDERED.</b>

New Haven, Connecticut
February 23, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge